Good morning. May it please the Court, I'm William Welch for Appellant Anthony Basilici. You going to reserve any time for rebuttal? Yes, please. Two minutes. Judge, help me. Okay. And you may proceed. Let's begin. Count five should be dismissed. Not only was the evidence insufficient that Justin Joseph possessing and discharging a firearm Could you get closer to the microphone a little bit? I'm sorry. I'm happy to. I'm going to restart the eight minutes because it wasn't really audible. I appreciate that. Thank you. Only 14 seconds went by. Count five should be dismissed. Not only was the evidence insufficient that Justin Joseph possessing and discharging a firearm Was foreseeable to Basilici, but the evidence was insufficient to generate a Pinkerton instruction. And the one given was incorrect. The government conceded on page 17 of their brief that, quote, there was no evidence Basilici discharged. The government also conceded that Pinkerton liability requires sufficient proof a co-conspirator's substantive crime Was reasonably foreseeable to the defendant. Is your argument he wasn't a co-conspirator or that it was not foreseeable to him That a firearm would be used in furtherance of the conspiracy by a co-conspirator? The latter, that it was not foreseeable. We do agree that there was a conspiracy. Okay. So you concede he was a conspirator? Yes, Your Honor. Okay. So hone down on the evidence because the trial judge certainly rejected your argument And found that the jury could have found that either he personally discharged the firearm Or that he was in the car with someone with firearms And he knew quite well that they intended to go shoot up the house of the rival. Well, our position is that the evidence against Basilici, the April 10th assault, did not involve firearms. Nor did the April 26th transaction involve firearms. The April 30th wiretap conversation did not involve firearms. And it was only on an after-the-fact conversation on May 10th that there was some suggestion That based on a series of inferences, piled one on top of the other, That the government concluded there was discussion of firearms. But piling inferences on top of one another cannot support a verdict. So what are the inferences? Well, the inferences were that CD, the term CD, meant firearms. But it had been used and Agent Goli, I think I'm saying that properly, Who was the government's case agent, said that CD could mean a lot of things. Okay. So if that meant firearms, what's the next or previous inference that you're worried about? Well, there is not evidence. Well, they inferred that Basilici was in the car. And that there was talk about CDs meaning firearms. And you'd have to stack these inferences. So there's two? You're saying there's two? I'm just trying to identify what the inferences are there. Okay. In going through the inferences in the wiretap conversation on May 10th, The government makes, I believe I counted, 22 inferences in that. Ten of which are stacked, in which they go through and they basically say, well, if the reference Did the jury need any more than the two that you've identified as the primary inferences? Well, I would say yes, because they used ten. To be entitled to a Pinkerton instruction? For a Pinkerton instruction, you'd have to have non-stacked inferences, is our position. And the problem here is because you've got a series of inferences, I believe ten, that are stacked, That it was inappropriate. And that conversation from which they're making the inferences is after the fact. And Bacillus would have to have known that Joseph would have a firearm and discharge it, Or at least have a firearm, before. He would have to know about that on or before Joseph's discharge of it on May 8th. And the problem is that the May 10th conversation that they wiretap and make inferences from Is two days after the fact. So foreseeability Were you counseled below? I was not. At closing argument, did counsel argue what CDs might otherwise have meant based on the evidence? I am not sure that was part of the closing argument. Honestly, I would have to go back and check the closing argument for that, Your Honor. And I would be happy to submit that to the court. No, that's okay. Let me also ask you, because doesn't the matter of the Pinkerton instruction, Isn't it really a factual jury determination? The judge basically gave almost the first circuit pattern instruction, But isn't it really ultimately a determination for the jury to see if there's going to be Pinkerton liability? Because he's not making a determination as a matter of law. He's got to leave that to the jury. So doesn't that weigh in the government's favor? Not in this case, because there are two problems. Number one, the Pinkerton instruction that the court gave omitted the part about beyond a reasonable doubt. But one of the things, the other thing about the instruction, as you mentioned, it was not objected. It was like everybody, I believe, agreed. It was not explicitly objected to that omission, But there was the objection to the instruction, to the Pinkerton instruction, Because it was trial counsel's objection that it should not have been given at all. That was the position in the district court. Now, there's another problem. So what you're saying is it should have been the district court who says, I'm not going to give a Pinkerton instruction. It shouldn't, as a matter of law, there's no Pinkerton liability here. Well, the judge should have recognized below that the evidence didn't generate a Pinkerton instruction in this case. That it was not foreseeable. And that was something. Foreseeability was argued on motion for judgment of acquittal to the trial. Okay, but if it's denied on judgment of motion acquittal, then the judge proceeds with the Pinkerton. Yes, but the judge should still have given a correct Pinkerton instruction. And the problem with the Pinkerton instruction in this case and the confusion that it caused is shown in the jury question that is ultimately asked in this case. The. And you can go back to that in a second, but let me ask about the jury question. One of the arguments that you have was that the judge simply responded via note. And having sat in the district court for over 15 years, I did that many, many times. Other times, you know, I felt, you know, the jury would ask you. And one of the instructions the judge will say is if you need to ask questions, continue to ask them as many times. Send another note. Send another note. If they're not responding once you send your note, it's the note's there. They're doing what they have to do. After that note, there's no other further explanation. And, of course, the judge, if anything else had happened, could have brought them back in. But where do you get the authority that the note is wrong? Because I think not only myself in the past, but that's a fairly common practice. Unless it's a very complicated issue, you need to bring the jury back. But it's really the judge's discretion. Well, there's two things on that. It's not that notes back and forth between a judge and a jury is per se a problem. I'm not saying that. What I'm saying is in this situation, the response omitted the instruction to consider the response together with all the jury instructions. And the response was handled in a very haphazard way in this case. The problem with just saying, leave a note in the jury room and you can stick your head in, is it sounds like it's optional to the clerk to make sure that the jury gets the answer to the question. I mean, we don't know. We hope the jury got the answer to the question. But there was no objection when the judge wrote the note and sent it back. Everybody said, we're in agreement. Let's send it there. No, there wasn't. And I would submit that I was trying to argue that more as supporting the point of how the jury would be confused by the response or lack of response that they got. The verdict sheet being confusing by conflating actual possession by bacillacy of another firearm with Pinkerton liability for the firearm that Joseph discharged in this case. And it could have been done better. You know, this court has established precedent in the Mirage case for how communications ought to be handled. But it could have done better doesn't necessarily amount to error. Well, it could. It has to be a prejudicial error. It could if it results in confusion to the jury. And ultimately, if it relieves the government of the burden of proof, which I argue in this case that it does, then that Where's the evidence of confusion? Because, again, there's cases and reported cases that the jury kept saying, please clarify this, clarify that, or this and that, and you see a series of notes. There's no other notes after this one. Well, there's a problem between, number one, they're confused. They're asking the question indicates confusion. The court's response was incomplete and violated bacillacy's due process. But notes can be the result as a practical matter and not necessarily confusion. Maybe they want to clarify or they just want to make sure they're following. The judge usually, I don't know if this judge gave the jury instructions to take the jury room or read them, but sometimes, you know, jurors have 50, 60 instructions and they just want to make sure they're right. It might not be confusion. They just want to make sure we're doing the right thing. Well, I'm arguing that they're asking the question could reasonably have foreseen because they want to know what that means. And that is something that is difficult for the ordinary person to understand, could reasonably have foreseen. And the court did not really clarify that but seemed to parrot that back to them. But the bigger problem is that the court did not say you've got to consider that together with all the instructions in the case. And, of course, there was still the absence of the beyond the reasonable doubt standard. You seem to be arguing for a per se rule of law that if a jury asks for clarification of a specific set of words or a specific portion of the instruction, that it is always error if the judge does not, in providing the answer, also say either and remember the burden is on the government to prove beyond a reasonable doubt or at least and remember all the other instructions I gave you. Are you arguing for such a per se rule? I'm not arguing for a per se rule, but I'm arguing that that is what the judge should have done in this case because of the I don't see what it is about this case that would carve it out from your notion that it not only would have been better, but it was a violation of your client's rights that the judge did not add that additional language. In this case, I'm arguing that it is because the jury was confused about what foreseeability of the question was. Most jury questions come to the judge because the jury has a question. Whether it shows confusion or something else, the jury is interested in pursuing that. So that doesn't differentiate your case. But what would be different in this case is that the Pinkerton instruction was flawed because it admitted the burden. And the judge's response about Pinkerton foreseeability did not remind the jury of the burden. So I would like to consider that response with all of the other instructions. But let's assume we were to rule in your favor that the committed error were not reminding the jury about the burden of proof. Probably every case we get about jury instructions, that's already happened before that. It's going to be the same issue because judges normally give the beyond reasonable doubt instruction, but they don't tag it along every time they repeat an instruction. Some judges will rehash it, but it's not an obligation for anybody. At least there's no case law saying that until now. Well, the pattern instruction has it. And certainly we would want the courts, the district courts to follow the pattern instruction. Okay. We have your argument. Thank you. Okay. Thank you. You got the remote. Thank you, counsel. Please introduce yourself on the record to begin. Your Honors, may it please the Court, Randall Crum on behalf of the government. To start with the second question about this sort of procedure and substance of the supplemental instruction, our principal argument here is waiver because this is one in which probably more than I've seen in a long time, the defense counsel participated directly in the drafting of supplemental instruction and actually suggested wording and it went on for some time. And the procedure that was going to be left for the jury was mentioned by the judge at the beginning, mentioned during the middle, mentioned at the end without objection. And if there's ever a case where acquiescence and participation goes to the point of waiver, I think this is such a case where it would be difficult to argue that the defense counsel did not acquiesce and agree to both the procedure used and the particular language used. But as this Court has indicated, this Court has never said that the supplemental instruction has to tag on additional language. The parent case specifically says the Court is often best advised to actually limit its response to the particular question asked and not get into other matters to avoid confusing the jury. The judge did that. The note was left. There's no indication that they didn't find it. If they deliberated for another several hours the next day until 2.30, if they didn't get an answer and were wondering why they hadn't, they could have asked. But certainly the lack of a record on that is due to lack of any objection or any question. So, again, on plain error review, you couldn't find any reversible error even if it isn't waived. Let me ask you, do you know of any case law from this circuit or anywhere else that requires, when you give a Pinkerton instruction, to talk of rehash or restate beyond a reasonable doubt, even though the pattern instruction is not binding? It's a pattern instruction. We haven't adopted it in any case. But are you aware of any opinion, presidential value, requiring that? I'm not aware of any requiring that. And, again, I think the First Circuit is clear that you're better advised to not get into additional matters. And certainly the question beyond a reasonable doubt had been stated multiple times during the original instruction, and it doesn't seem likely when they had a narrow question that they would have forgotten the overall burden of proof that the government has to meet. They do rely on Second Circuit precedent saying that you ultimately should, in supplemental instruction cases, more often bring the jury in. But that's not the First Circuit's view. So the fact that the Second Circuit may have a different view on that doesn't control here, and, again, we're on plain error if not waiver. So certainly it cannot find that there was any error in the either substance or procedure of that instruction. To return to Judge Howard's question and the question of stacking inferences, I think really essentially there's only two here that have to be – there was multiple pieces of information suggesting that Basilici was in the car afterwards. There was his own statements and recorded calls suggesting that things were being thrown out the window. One, two, total three, which could be referred to as CDs but could have been interpreted under the circumstances to mean firearms. There was the fact he was hiding in the woods, and in a recorded call asked if Otero had also been in the woods. That was the woods where Brandao was found. It was where the car was crashed as it sped away from the scene of the encounter with Frey. There's multiple pieces of evidence putting him in the car with them afterwards, and there's simply one more inference, which is it's common sense to believe that as they sped away, they wouldn't pick up another person only to have them throw out a gun and then get out of the car, but that he was with them from the outset, which is what the district court found, that that's a ready inference to make, that if you're in the car leaving, throwing out firearms with your Confederates in a conspiracy that's unchallenged here, a drug conspiracy to collect a drug debt, a particular event to collect a drug debt, you can infer that you were there at the outset and not just picked up as they sped away. And from that, I think the rest of it follows, that the inference that he was in the car with them as they went to collect drug debt with three firearms, he would have seen them, one of them was apparently extremely large, and that he would have seen them get out of the car, and from that, the likelihood that it would both be possessed, as the jury found it was, foreseeably possessed by Joseph, but also discharged, would be a ready inference to make, especially under the circumstances. To correct one factual point, they suggest there's no mention of firearms earlier in the case. In fact, that's not true in the attack on Owens. One of the pieces of testimony was that Owens was threatened by Otero, I believe, with a firearm. So this was a group that used firearms. This was a group that was readily accustomed to using violence against people that they thought were adverse to their interests, and there's really nothing to say that the jury would not have reasonably found that it was foreseeable. If Bacillus was in the car and saw them get out with the firearms, that they might be discharged. Mr. Crum, may I ask you a question? So our cases don't say anything about when you have multiple pieces of evidence that lead to an inference, that that constitutes stacking of inferences. Am I right about that? Yes, Your Honor. Okay. Is there anything in the government's view about our inference stacking cases that the government believes we need to clarify in this case? Or is this just a straightforward application? I mean, I think in this case it's not so much the stacking as it's the totality of the circumstances. Many of these inferences come from the same car ride and calls about it. So it's not as though you have to infer one thing from one set of circumstances, find something else from another set of circumstances, and additively one relies on the other. These were things that were occurring at the same time, and these were a set of inferences relating to the same set of events. I'm not sure. I take Your Honor's question. It's a little. Well, maybe it wasn't such an invitation, but I was wondering if there's anything that's troubling you. I think it can be hard to understand where totality of circumstances ends and stacking begins. I think this is not a case where it requires clarification, because where that would arise is I think would be in a circumstance where you have disparate inferences coming from different places of different types of evidence or different times, and one of them needs to additively relate to another to get where you're going. Here, where the inferences are all with respect to one set of events and interpretation of one set of a couple of calls within a short period of time, I don't think that inference stacking kind of concern arises. If the Court doesn't have any further questions, rely on the remainder of the arguments. Okay. No further questions? Thank you, Your Honor. Thank you very much. Two minutes remodeled. Please reintroduce yourself on the record to begin. Certainly. I'm William Welch on behalf of Anthony Basilisi. If I heard correctly, the government just conceded that at least two inferences were stacked. I also wanted to respectfully disagree with my colleague that Otero did not use a firearm. Otero threatened Owens with a hammer, and I think that's important. Granted, it's a weapon, but it wasn't a firearm, and I don't think that would have made a firearm foreseeable to Basilisi. Also, while certainly the instruction was objected to below, even if the issue was forfeited in this situation, the Court would have the opportunity under Rule 52 to look at this because it ultimately would lead to a due process violation of Basilisi's rights. With that, I would be happy to answer any questions the Court might have. Let me ask you, you mentioned the example of the hammer and the firearm, and you're asking us to say that you can't make that stacking inference, but we're not the trial court. Isn't the judge below is the one who's seeing all the evidence, and is it more sound for him to be the one who makes or allows that to go in, not us as a matter of law? Because you said from a hammer to firearm, you can't make that inference, but the judge is seeing the whole testimony, and again, I wasn't the trial judge, but the judge may say, well, they have firearms, they have a hammer. You can infer one thing or another because all the other evidence. You just can't simply say hammer, firearm. There's a lot of other facts going on there, and he's got that bird's-eye view of what's going below. I understand the Court's point, but my response to it is that in this case, the foreseeability of Joseph possessing and discharging a firearm needed to be foreseeable to Basilisi, and there was nothing in the evidence to suggest that Joseph would have and use a firearm. Okay. Thank you very much. Thank you, Your Honor. Thank you, Counsel. That concludes argument in this case.